"O"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | | |
|---|---|---|
| LAMOON, INC., | ) | SA CV 08-09 AHS (ANx) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | FINDINGS OF FACT AND |
| | ) | CONCLUSIONS OF LAW IN SUPPORT |
| ALFALFA NAIL SUPPLY, INC., et al. | ) | OF ORDER GRANTING PRELIMINARY INJUNCTION |
| | ) | |
| Defendants. | ) | |
| | ) | |
| AND RELATED COUNTERCLAIMS | ) | |
| _____ | ) | |

**I.**

**INTRODUCTION**

Having considered the Complaint and the papers in support of the Motion for Preliminary Injunction (the "Motion") filed by Plaintiff LAMOON, INC. ("Lamoon" or "Plaintiff"), the declarations and exhibits submitted therewith and the reply papers, the opposition papers submitted by Defendants ALFALFA NAIL SUPPLY, INC. ("Alfalfa"), REGAL NAILS SALON, AND SPA, LLC ("Regal LLC"), and REGAL NAILS SALON ("Regal Franchisee")

(collectively, "Defendants") and the declarations and exhibits submitted therewith, and all pleadings on file in this action as well as the oral argument of counsel, the Court makes the following findings of fact and conclusions of law.

## II.

## FINDINGS OF FACT

1. This is a civil action for infringement of two federally registered trademarks, false designation of origin under the Lanham Act, infringement of trade dress, and unfair competition. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1331, 28 U.S.C. § 1338(a), 28 U.S.C. § 1338(b), and under the principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Venue is proper pursuant to 28 U.S.C. §§ 1391(b) and 1391(c).

2. Plaintiff and moving party Lamoon is a California corporation having its principal place of business at 14931 Chestnut Street, Westminster, California 92683.

3. Defendant and responding party Alfalfa is a Louisiana corporation having its principal place of business at 11488 S. Choctaw Drive, Baton Rouge, Louisiana.

4. Defendant and responding party Regal LLC is a Louisiana limited liability company having its principal place of business at 5150 Florida Boulevard, Baton Rouge, Louisiana.

5. Defendant and responding party Regal Franchisee is a sole proprietorship having its principal place of business at 17170 East Gale Avenue, City of Industry, California.

6. Third-party defendant and responding party Consortium of Research Experts, Inc. ("CORE") is a North Carolina

corporation having its principal place of business at 313 Nottingham Drive, Chapel Hill, North Carolina.

7. Lamoon filed this action on January 4, 2008. Lamoon claims that defendants Alfalfa, Regal LLC, and Regal Franchisee are infringing its rights in the marks ORIGINAL LM® and LM®, as well as its trade dress rights. Lamoon alleges that defendants have sold and advertised, and are continuing to use and sell, fake fingernail tips bearing imitations of Lamoon's ORIGINAL LM® and LM® trademarks, as well as imitations of Lamoon's packaging for its own fake fingernail tips.

8. On March 10, 2008, defendants brought a third-party complaint against Lamour Nail Products, Inc. ("Lamour") and CORE for implied contractual indemnity and contribution. Defendants allege that they purchased certain accused fake nail tip products from Lamour and CORE.

9. On April 21, 2008, Lamoon brought this motion for preliminary injunction against defendants Alfalfa, Regal LLC, and Regal Franchisee, as well as against third-party defendant CORE. Lamoon based its motion for preliminary injunction on Alfalfa's use of at least the following imitations of Lamoon's ORIGINAL LM® and LM® trademarks: (i) "FRENCH LM"; (ii) "PEARL LM"; (iii) "ORIGIN LM"; (iv) "ORIGIN LN"; (v) "ORIGINAL LN"; (vi) "LM"; (vii) "LN"; and (viii) counterfeit "ORIGINAL LM" mark.

10. Defendants Alfalfa, Regal LLC, and Regal Franchisee opposed Lamoon's motion for preliminary injunction. Third-party Defendant CORE filed a notice of non-opposition to Lamoon's motion for preliminary injunction, agreeing not to use any of the marks in controversy until this litigation is

1 resolved.

2     11. Lamoon began using the mark ORIGINAL LM since at least 1997. (Declaration of Don Tran ("Tran Decl.") ¶ 2).

4     12. Lamoon owns the rights to trademark registration No. 2,374,244 for ORIGINAL LM®, as well as trademark registration No. 3,150,672 for LM®. (Id. ¶¶ 3, 7, Exhs. A & C).

7     13. The products at issue are fingernail tips. These nail tips are distributed through similar marketing channels.

9     14. The nail tips are relatively inexpensive, are typically sold in relatively large quantities, and purchasers exercise a relatively low degree of care in buying the nail tips.

12     15. Lamoon sells packages of 50 nail tips bearing the marks on a circular label, approximately five-eighths of an inch in diameter, with the trademarks prominently displayed across the top, and the "LM" mark in red. (Id. ¶ 4, Exh. B).

16     16. From 2000 to 2007, Lamoon's sales have dropped approximately 80 percent. (Id. ¶ 30). Lamoon claims that its worst sales years coincide with defendants' infringement. (Id. ¶¶ 27-29).

20     17. Defendant Alfalfa purchases nail tips from other manufacturers and suppliers for resale to its customers, including to Regal LLC. (Declaration of Dat Ton ("Dat Ton Decl.") ¶ 4).

24     18. Defendant Regal LLC is a franchisor of nail salons throughout the country. (Declaration of Quy Ton ("Quy Ton Decl.") ¶ 3). Regal LLC supplies its franchisees with initial supplies for its franchisees to use in their salons to start up. (Id. ¶ 5).

19. Defendant Alfalfa previously purchased "ORIGINAL LM" products from Lamoon, from early 1998 until approximately March 2000 — the purchases by Alfalfa from Lamoon exceeded $90,000, with "ORIGINAL LM" nail tips being the majority of the purchases by Alfalfa. (Tran Decl. ¶¶ 9, 10, Exh. D).

20. Since at least early 2002, Alfalfa began to purchase nail tips from third-party defendant Lamour including blank, unlabelled nail tips. (Declaration of Phuong Le ("Le Decl.") ¶ 4; Supplemental Declaration of Enoch Liang ("Liang Supp. Decl."), Exh. A). On the blank, unlabelled nail tips, Alfalfa places "its own label on the products" for "resale." (Id.).

21. In early 2002, Alfalfa began purchasing "LN" and "ORIGINAL LN" nail tips from third-party defendant CORE. (Le Decl. ¶ 8).

22. Despite claims to the contrary, defendants Alfalfa and Regal LLC have continued to use, advertise, and offer for sale infringing products after Lamoon initiated this litigation. (Declaration of Enoch Liang ("Liang Decl.") ¶ 2, Exh. A; Liang Supp. Decl. ¶ 3, Exh. B).

23. Defendant Alfalfa sells its packages of 50 nail tips bearing marks on a circular label, approximately five-eighths of an inch in diameter, with the trademarks prominently displayed across the top, and the "LM" mark in red. (Tran Decl. ¶ 12). Across the bottom of the label, Alfalfa labels the nail tips "ANS Inc. USA." (Id.).

24. Defendant Regal LLC is inextricably intertwined with Defendant Alfalfa. For example, Regal LLC is listed on the

1  "Contact Us" section of Alfalfa's Website. (Id., Exh. J). Regal
2  LLC advertises in Alfalfa's Catalogue. (Liang Decl., Exh. B; Quy
3  Ton Decl. ¶ 9). Quy Ton — the CEO of Regal LLC — also holds
4  himself out as the "Owner" of Alfalfa, including in an
5  "Application for Credit" to Lamoon. (Quy Ton Decl. ¶ 1; Tran
6  Decl., Exh. D). Regal LLC also registered Alfalfa's Website,
7  www.alfalfans.com.

## III.

### CONCLUSIONS OF LAW

10      25. To prevail on a Lanham Act claim, a plaintiff must
11 prove two elements, known as the "validity" and "infringement"
12 prongs: first, plaintiff must prove the presence of a valid,
13 protectable trademark; and second, plaintiff must show
14 defendant(s) use(s) a confusingly similar mark. Comedy III
15 Productions, Inc. v. New Line Cinema, 200 F.3d 593, 594 (9th Cir.
16 2000); Brookfield Comm., Inc. v. West Coast Entertainment Corp.,
17 174 F.3d 1036, 1046-52 (9th Cir. 1999). A plaintiff "need not
18 show it will positively prevail on the merits," but rather, needs
19 to demonstrate a "reasonable chance of success on the merits."
20 Dogloo, Inc. v. Doskocil Mfg. Co., Inc., 893 F. Supp. 911, 917
21 (C.D. Cal. 1995) (quoting Gilder v. PGA Tour, Inc., 936 F.2d 417,
22 421 (9th Cir. 1991)).

23      26. On August 8, 2000, plaintiff obtained Federal
24 Trademark Registration for the ORIGINAL LM® MARK, assigned
25 Trademark Registration Number 2,374,244. (Tran Decl., Exh. A).
26 On October 3, 2006, plaintiff obtained Federal Trademark
27 Registration for the LM® MARK, assigned Trademark Registration
28 Number 3,150,672. (Id., Exh. C).

6

27. Plaintiff's registration of the marks constitutes *prima facie* evidence of the validity of the registered marks and of plaintiff's exclusive right to use the marks on the goods specified in the registration. Brookfield Comm., 174 F.3d at 1047.

28. The central element for trademark infringement is whether the similarity of marks is likely to confuse consumers. GoTo.com. Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 (9th Cir. 2000). The critical inquiry is "whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." Playmakers LLC v. ESPN, Inc., 376 F.3d 894, 897 (9th Cir. 2004).

29. The following eight factors assist a court in making the likelihood of confusion analysis: (1) strength of plaintiff's mark(s); (2) similarity of the marks (sight, sound, and meaning); (3) relatedness of the goods; (4) marketing channels used; (5) defendant's intent in selecting marks; (6) evidence of actual confusion; (7) likelihood of expansion; and (8) degree of care likely to be exercised by the purchasers. AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979); Brookfield Comm., 174 F.3d at 1053.

30. Applying the Sleekcraft factors, the mark "ORIGIN LM" is confusingly similar to Lamoon's ORIGINAL LM® and LM® trademarks.

31. Applying the Sleekcraft factors, the mark "ORIGIN LN" is confusingly similar to Lamoon's ORIGINAL LM® and LM® trademarks.

32. Applying the Sleekcraft factors, the mark

7

1  "ORIGINAL LN" is confusingly similar to Lamoon's ORIGINAL LM® and
2  LM® trademarks.

3  33. Applying the <u>Sleekcraft</u> factors, the counterfeit
4  mark "ORIGINAL LM" is confusingly similar to Lamoon's ORIGINAL
5  LM® and LM® trademarks.

6  34. Applying the <u>Sleekcraft</u> factors, the marks "LM",
7  "LN", "FRENCH LM" and "PEARL LM" are confusingly similar to
8  Lamoon's ORIGINAL LM® and/or LM® trademarks.

9  35. Defendants' claim that a preliminary injunction
10 order would have a negative effect on their business and
11 reputation is unconvincing.

12 36. Where a plaintiff demonstrates a likelihood of
13 confusion, and thus a likelihood of success on the merits, it is
14 ordinarily presumed that the plaintiff will suffer irreparable
15 harm if the injunction is not granted. <u>Brookfield Comm.</u>, 174
16 F.3d at 1066.

17 37. Because Lamoon has shown a likelihood of
18 irreparable injury and demonstrated a probability of success on
19 the merits of its trademark infringement claims, it is entitled
20 to a preliminary injunction.

21 38. Plaintiff has not, however, established a
22 likelihood of irreparable injury or demonstrated a probability of
23 success on the merits of its claim against Regal Franchisee.
24 //
25 //
26 //
27 //
28 //

## IV.

## CONCLUSION

Accordingly, and for all the foregoing reasons, plaintiff is granted preliminary injunctive relief as against defendants Alfalfa and Regal LLC.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the clerk shall serve a copy of this Order on counsel for all parties in this action.

Dated:   June 17, 2008

*ALICEMARIE H. STOTLER*
_____
Alicemarie H. Stotler
Chief United States District Judge